# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 3270 | DATE | 7/29/2004 |
| CASE TITLE | Nicholas Escamilla vs. J.R. Walls, Warden | | |

MOTION:

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Respondent's motion to dismiss (33-1) petitioner's petition for habeas corpus is granted. Escamilla's motion for appointment of counsel (37-1) is denied. Any other pending motions are moot. The status hearing set for 8/26/04 is stricken.

(11) ■ [For further detail see order attached to the original minute order.]

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

NICHOLAS ESCAMILLA,  )
          Petitioner,  )
          v.  )  No. 00 C 3270
J.R. WALLS, Warden,  )
          Respondent.  )

JUL 3 0 2004

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Presently before us is Petitioner Nicholas Escamilla's motion for appointment of counsel and Respondent Eugene Jungwirth's[1] Motion to Dismiss Escamilla's petition for habeas corpus. For the following reasons, we grant the respondent's motion to dismiss and deny Escamilla's motion for appointment of counsel.

## BACKGROUND

On June 2, 1994, a jury convicted Petitioner Nicholas Escamilla of first-degree murder. He was sentenced to twenty-nine years imprisonment. Escamilla filed a timely appeal and, on March 31, 1997, the Illinois Appellate Court affirmed his conviction. *See Illinois v. Escamilla*, No. 1-94-3267 (Ill. App. Ct. March 31, 1997). The Illinois Supreme Court denied his petition for leave to appeal on October 1, 1997. *Illinois v. Escamilla*, No. 83456 (Ill. Oct. 1, 1997).

Three years later, on May 30, 2000, Escamilla filed the present habeas corpus petition. Because he had not exhausted his state law remedies as to all of his claims, this Court dismissed Escamilla's

---

[1] Escamilla was transferred to the East Moline Correctional Center in March of 2004. Eugene Jungwirth is the Warden of that facility and therefore is the proper respondent in this action. *See* Rules Governing Section 2254 Cases in the United States District Courts - Rule 2, 28 U.S.C. foll. § 2254 (requiring that the state officer who has custody of the petitioner be named as the respondent in habeas corpus actions brought pursuant to 28 U.S.C. § 2254).

petition without prejudice, instructing him that he could reinstate his case within sixty days of the termination of his post-conviction proceedings in Illinois state court. *See Escamilla v. Snyder*, No. 00-C-3270 (N.D. Ill. June 6, 2000). At that time, we observed that Escamilla's petition may be time barred since he brought it more than one year after the completion of his state appellate proceedings. *See* 28 U.S.C. § 2244(d) (imposing a one year statute of limitations which begins to run with the termination of direct review). Because Escamilla argued that he had recently discovered previously unavailable "proof of innocence," however, we reserved judgment on the issue of timeliness until after the completion of his state post-conviction proceedings.

Escamilla then brought a post-conviction petition in the Circuit Court of Cook County, Illinois on September 1, 2000. The circuit court dismissed the petition as untimely[2] and because it was substantively without merit. The Illinois Appellate Court affirmed the lower court's dismissal on substantive grounds. *See Illinois v. Escamilla*, 01-01-0192 & 01-01-1060 (Ill. App. Ct. May 8, 2003). The Appellate Court observed, however, that it was improper to dismiss Escamilla's petition as untimely. Citing a recent decision of the Illinois Supreme Court, the Appellate Court noted the rule that a post-conviction petition may not be dismissed for untimeliness during the first stage of Illinois' post-conviction process, during which a circuit court should focus solely on whether the post-conviction petition is frivolous or patently without merit. *Illinois v. Escamilla*, No. 93 CR 5971, at 7-8 (Ill. App. Ct. May 8, 2003) (citing *Illinois v. Boclair*, 789 N.E.2d 734, 739-42 (Ill. 2002)). Because the appellate court agreed that Escamilla's petition did not have merit, however, it affirmed the judgment of the circuit court.

---

[2]Illinois law requires post-conviction petitions to be brought within six months of the denial of a petition for leave to appeal to the Illinois Supreme Court, unless the petitioner alleges facts showing that the delay was not due to his own culpable negligence. 725 Ill. Comp. Stat. 5/122-1(c).

Following the appellate court's decision, Escamilla amended his habeas corpus petition and filed his motion for appointment of counsel. The respondent then moved to dismiss, arguing that Escamilla's habeas petition is barred by the statute of limitations.

## ANALYSIS

Escamilla has brought his habeas corpus petition pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996. Under § 2254(a), a federal court may not grant a writ of habeas corpus unless it determines that the petitioner is in custody in violation of the Constitution, laws, or treaties of the United States. *See Kavanagh v. Berge*, 73 F.3d 733, 735 (7th Cir. 1996). In reviewing state court proceedings, we must take the state court's factual findings as correct, if the findings were made after a hearing on the merits and are fairly supported by the record. *Id.* Escamilla has filed his habeas corpus petition *pro se*. Thus, we have a responsibility to liberally construe the allegations in his petition. *Calhoun v. DeTella*, 319 F.3d 936, 943 (7th Cir. 2003).

The respondent argues that we should dismiss Escamilla's post-conviction petition outright because he filed it beyond the applicable one-year statute of limitations. Specifically, 28 U.S.C. § 2244(d) provides that "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." Generally, the limitations period begins to run "on the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(A). However, the one-year limitations period is tolled while a "properly filed" application for state post-conviction relief is pending. 28 U.S.C. § 2244(d)(2).

Escamilla claims that, because the proceedings on his post-conviction petition concluded on May 8, 2003, and he renewed his habeas petition less than a year later, his petition is not time barred.

3

This argument ignores the fact that, when Escamilla *originally* filed his habeas petition in May of 2000, he had already missed § 2244(d)'s deadline for filing by over one year. As noted above, the Illinois Supreme Court denied Escamilla's motion for leave to appeal in his direct appeal on October 1, 1997. He had ninety days to apply for a writ of certiorari from the United States Supreme Court. *Gideon v. Bowen*, 249 F. Supp.2d 1014, 1015 (N.D. Ill. 2003). Escamilla did not file his petition for a writ of habeas corpus until nearly three years later.

Nonetheless, Escamilla argues that his habeas petition is not time-barred because the Illinois Appellate Court found that his post-conviction petition should not have been dismissed as untimely. As noted above, § 2244(d)(2) tolls the statute of limitations while any "properly filed" petition for post-conviction review is pending. The Seventh Circuit has held that whether a petition is "properly filed" within the meaning of 28 U.S.C. § 2244(d)(2) is a matter of state law, "so that if a state court accepts and entertains it on the merits it has been 'properly filed' but that if the state court rejects it as procedurally irregular it has not been 'properly filed.'" *Fernandez v. Sterns*, 227 F.3d 977, 978 (7th Cir. 2000); *see also Smith v. Walls*, 276 F.3d 340, 343 (7th Cir. 2002) (finding that only a "properly" filed application for post-conviction review will toll the one-year statute of limitations imposed upon habeas corpus actions). In this case, the Illinois Appellate Court chose to evaluate Escamilla's petition on its merits and expressly rejected the circuit court's decision to dismiss it as untimely. Therefore, Escamilla may be correct in asserting that his post-conviction petition was "properly filed" within the meaning of § 2242(d)(2).

However, whether his post-conviction was "properly filed" or not does not conclude our inquiry. According to § 2242(d)(2), the one-year statute of limitations for filing a habeas petition is tolled only while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim *is pending*." (emphasis added). The Seventh Circuit

has emphasized that an action is not "pending" within the meaning of § 2244(d)(2) if there is a large gap of time between the end of a direct appeal and the commencement of post-conviction proceedings. *Fernandez*, 277 F.3d at 979 ("It is sensible to say that the petition continues to be 'pending' during the period between one court's decision and a timely request for further review by a higher court . . . it is not sensible to say that the petition continues to be 'pending' after the time for further review has expired without action to continue the litigation."). The clock began to run on Escamilla's habeas corpus petition when, ninety days after his motion for leave to appeal was denied, he failed to apply to the United States Supreme Court for a writ of certiorari. 28 U.S.C. § 2101(c). His time ran out when, one year later, he failed to file a petition for a writ of habeas corpus or a petition for post-conviction review in Illinois court. We therefore find that Escamilla's habeas corpus petition is untimely.

Escamilla next argues that, even if his petition is untimely, the statute of limitations should be tolled because he did not discover some of the evidence underlying his post-conviction petition until after the filing deadline had passed. The statute of limitations for filing a habeas claim may be tolled until "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." § 2244(d)(1)(D). In considering whether the statute of limitations for filing a habeas petition should be tolled under § 2244(d)(1)(D), a court must focus on "when the factual predicate *could have been discovered through the exercise of due diligence*', not when it was actually discovered by a given prisoner." *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2001) (emphasis added) (quoting §2244(d)(1)(D)).

Escamilla offers two types of "newly discovered" evidence. First, he presents various documents which allegedly substantiate his allegation that he was physically coerced into confessing. This evidence documents an alleged pattern of abuse by several police officers - Detectives Halloran,

5

O'Brien, Ryan, and Boudreau (the "detectives") - who Escamilla claims questioned him on the night of his arrest. Escamilla states that he could not have presented this evidence earlier because he did not learn about the pattern of abuse until after the completion of his first appeal, some time in late 1999 or 2000. (Petitioner's Response at 5.) However, Escamilla's own submissions demonstrate that he could have discovered the allegations of abuse by the detectives well before the one-year statute of limitations ran. For example, he submits a report issued by the Chicago Police Department Office of Professional Standards from May 1997, a *Chicago Tribune* article from January 14, 1993, and internal police records, all of which documented complaints made against the detectives as early as 1988. (Petitioner's Amended Petition, Exs. 1, 4.) There is no question that Escamilla could have obtained this evidence through the exercise of due diligence much earlier than 1999 or 2000.

Escamilla does provide more recent evidence to support his allegations of police abuse, including a civil complaint filed against the detectives by an alleged torture victim in 2004. However, these individual items of evidence are merely corroborative of a much larger body of evidence that began building against the detectives almost ten years before Escamilla's habeas petition was due. Courts interpreting § 2244(d)(1)(D) have emphasized that the statute of limitations is tolled only in cases where the petitioner could not have discovered the *factual predicate* underlying his claim earlier. The statute of limitations is not tolled while the petitioner attempts to discover every item of evidence that could possibly substantiate his claim. *See Caffey v. Briley*, 266 F. Supp.2d 789, 792-93 (N.D. Ill. 2003) ("The clock starts running when the petitioner has actual or putative knowledge of the factual predicate, not the evidence itself.").[3] The bottom line is that

---

[3] Furthermore, Escamilla's own evidence suggests that he knew of a pattern of abuse by the detectives at his trial. One of the documents that he submitted in support of his amended habeas petition was a subpoena issued by his lawyer in 1993, which requested "[a]ny and all O.P.S. Reports" on Detectives Ryan, Halloran, and O'Brien. Escamilla also included the documents that he received in

6

Escamilla could have discovered plenty of documentation that others suffered abuse at the hands of the same detectives who questioned him well before the statute of limitations ran on his habeas claim. Thus, the new evidence that he presents is insufficient to toll the statute of limitations.

The second category of evidence presented by Escamilla is a group of affidavits that he submitted prove that he was not present at the scene of the shooting for which he was convicted. This evidence is proffered in support of Escamilla's claim that he was denied effective assistance of counsel because his attorney failed to investigate or present an alibi defense at trial. Two of the affidavits pertain to a conversation that took place on April 18, 2002 between Bertha Escamilla, the petitioner's mother, Lydia Taylor, Executive Director of the Justice Coalition of Greater Chicago, and Raphael Robinson, a witness who testified at Escamilla's trial. According to the affidavits, Robinson said during the conversation that his trial testimony, which suggested that Escamilla might have been present at the crime scene, had been improperly influenced by police pressure and possibly by threats of police abuse. Escamilla also submitted two other affidavits, one from Escamilla's wife, and another from an acquaintance. Both affiants claim that they were at home with Escamilla on the day of the murder.

Once again, these affidavits are not sufficient grounds for tolling the statute of limitations because they could have been obtained earlier through the exercise of "due diligence." Although the affidavits themselves were drafted in the past few months, Escamilla does not provide any explanation as to why he could not have obtained them at a much earlier date. Certainly, his mother could have spoken with Raphael Robinson well before 2002. As for the alibi witnesses, no reason has been provided as to why they could not have submitted affidavits immediately after the

---

response to the subpoena, which reveal that two complaints of physical abuse had been filed against Officer Halloran and that two had been filed against Detective O'Brien.

conclusion of his direct appeal, or even earlier. We thus find that none of the affidavits presented provides a basis for tolling the statute of limitations period.

Escamilla also argues that the statute of limitations should be tolled because he did not have access to his case files for several years. According to Escamilla, in 1997, he gave all of his documents to an "inmate law clerk, who was abruptly transferred." (Response at 2.) He claims that these documents were not returned to him until 2000. Although this is an unfortunate circumstance, it does not excuse Escamilla's tardiness in filing his habeas petition. Even if he is represented by counsel, a petitioner has an independent obligation to ensure that he meets all filing deadlines. *See Modrowski v. Mote*, 322 F.3d 965 (7th Cir. 2003) (dismissing a habeas petition that was filed one day late, despite the fact that the failure to meet the filing deadline was due to the petitioner's attorney's own incapacity). Thus, "clients, even if incarcerated, must 'vigilantly oversee,' and ultimately bear responsibility for, their attorney's actions or failures." *Id.* at 968. Although we are not presented with an attorney/client relationship in this case, the rule is still applicable. Escamilla had an independent obligation to meet the filing deadline, even if he did not have access to all of his documents. At the very least, he could have filed his habeas corpus petition by the one-year deadline and requested leave to amend at a later date. Instead, he remained silent while he waited for his documents for two years. Thus, the loss of his documents is not an appropriate reason to toll the statute of limitations.

Finally, Escamilla argues that we should disregard his late filing because the "new" evidence that he presents proves that he is actually innocent. An actual innocence claim "can provide a gateway for federal habeas courts to review procedurally defaulted claims." *See Caffey v. Briley*, 266 F. Supp.2d 789, 793 (N.D. Ill. 2003) (citing *Herrera v. Collins*, 506 U.S. 390 (1993)). The Seventh Circuit has not yet ruled on the more specific question of whether an assertion of actual

8

innocence can override § 2244(d)(1)'s statute of limitations in a case where the death penalty is not at issue.[4] However, we need not speculate about how the Seventh Circuit would rule on such a question because, even assuming an actual innocence claim would allow him to circumvent the time-bar that he faces, the evidence presented by Escamilla is not sufficient to succeed on such a claim.

To demonstrate actual innocence, a petitioner must show that a constitutional violation has resulted in the conviction of a person who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). To do so, he must present new evidence[5] which demonstrates that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* Both the United States Supreme Court and the Seventh Circuit have stressed that the actual innocence exception only applies in the most extraordinary cases. *Id.* at 299; *see also Bell v. Pierson*, 267 F.3d 544, 552 (7th Cir. 2001).

Escamilla presents "new" evidence which he believes will demonstrate that he was not present at the scene of the murder. Specifically, he claims that police officers improperly coerced the testimony of an eyewitness, Raphael Robinson. Robinson's testimony was crucial to demonstrating that there were three rather than two people present during the shooting. Escamilla also proffers the affidavits of several witnesses who claim that they were at home with Escamilla at the time of the shooting. Although this evidence might be helpful to Escamilla in asserting an alibi

---

[4] As the respondent points out, this issue is presently before the Seventh Circuit. *See Gildon v. Bowen*, 03-2076 (7th Cir. Oral Argument held May 26, 2004).

[5] The phrase "new evidence" has different implications in both the statute of limitations and actual innocence contexts. As discussed above, to overcome § 2244's one-year statute of limitations, a habeas petitioner must present evidence that he could not have obtained earlier by the exercise of "due diligence." § 2244(d)(1)(D). In the context of an actual innocence claim, all that is required is that the new evidence be reliable and that it was not presented at the petitioner's original trial. *Gomez v. Jaimet*, 350 F.3d 673, 679 (7th Cir. 2003). Thus, when inquiring into actual innocence, there is no need to consider the question of when the petitioner discovered (or could have discovered) the evidence.

9

defense, it is not sufficient to establish actual innocence when considered in tandem with the other evidence that was presented at his trial. The substance of Escamilla's alibi defense is completely contradicted by Escamilla's own trial testimony, in which he admitted that he was present when the shooting occurred.[6] Obviously, Escamilla's own trial testimony provides a basis for a reasonable juror to conclude that he was guilty of the murder, even in light of new conflicting testimony that he was not present when the shooting occurred. As such, he has not met the stringent actual innocence standard. Because he has not asserted any valid exception to § 2244's one-year statute of limitations, Escamilla's habeas corpus petition is time-barred.

## CONCLUSION

For the foregoing reasons, Escamilla's motion for a writ of habeas corpus is denied, as is his motion for appointment of counsel. If Escamilla wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4).

If Escamilla wishes to proceed *in forma pauperis* on appeal, he must file a motion to do so. The motion should set forth the issues that he plans to present on appeal. Fed. R. App. P. 24(a)(1)(C). Escamilla is warned that if a prisoner has had a total of three federal cases or appeals dismissed as frivolous, malicious, or for failure to state a claim, he may not file suit in federal court without prepaying the filing fee unless he is in imminent danger of serious physical injury. 28 U.S.C. § 1915(g). If Escamilla chooses to appeal and does not proceed *in forma pauperis*, he will be liable for the $105

---

[6]Escamilla argues that he had no choice but to perjure himself by admitting that he was present at the shooting because he had already been beaten by the police into confessing. However, there is no evidence that Escamilla was forced to *testify* as he did. As such, Escamilla has no viable claim that he was forced to testify in violation of his Fifth Amendment rights under the United States Constitution. Furthermore, his alibi defense is also belied by the statement that he gave to the police, in which he admitted that he was present. Although Escamilla claims that this confession was taken in violation of his Fifth Amendment rights, that fact was never established at trial and there is no guarantee that Escamilla would prevail on a motion to suppress his confession if granted a new trial.

appellate filing fee irrespective of the outcome of the appeal. *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). It is so ordered.

_____
MARVIN E. ASPEN
United States District Judge

Dated: 7/29/04

11